**FILED - GR**
December 3, 2007 2:35 PM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:____mla____/_____

UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

PAMELA WELLS,

-vs-

Case No.
Hon.

**1:07-cv-1214**
**Paul L Maloney**
**US District Judge**

**DEMAND FOR JURY TRIAL**

CORPORATE RECEIVABLES, INC.
ANGELA GALVIN,
    Defendants.

## COMPLAINT & JURY DEMAND

*Pamela Wells the following claims for relief:*

### Jurisdiction

1. This court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

2. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### Parties

3. The Defendants to this lawsuit are as follows:

    a. Corporate Receivables, Inc. ("Corporate Receivables") which is a corporation doing business in Michigan.

    b. Angela Galvin, who is a debt collector and agent for Corporate Receivables.

### Venue

4. The transactions and occurrences which give rise to this action occurred in Newago County.

1

5. Venue is proper in the Eastern District of Michigan.

## General Allegations

6. Some time prior to July 2007, Corporate Receivables was engaged by HSBC to collect a debt allegedly owed by Pamela Wells.

7. In a letter dated July 12, 2007, Corporate Receivables sent its validation notice pursuant to 15 U.S.C. 1692g to Pamela Wells and a demand that she pay $8,169.64 on the HSBC account.

8. The July 12, 2007, letter falsely states that Mrs. Wells owes $8,169.64. That amount is in excess of what is due on the account.

9. On July 13, 2007, Corporate Receivables and its debt collectors were in possession of Mrs. Wells' home telephone and address and her work telephone number.

10. On or about July 13, 2007, Corporate Receivables communicated with Pamela Wells for the first time by leaving a voicemail message for her at 9:06 am on her work phone.

11. Because the message left was vague, Pamela Wells did not realize the call was related to a collection matter.

12. Mrs. Wells works in a cubicle in an office that affords no sound barrier or privacy from the other workers that surround her in the office.

13. Mrs. Wells is prohibited by her employer from taking personal calls on the business line.

14. At 9:11 Mrs. Wells returned the phone call and reached Angela Galvin.

15. Miss Galvin began quizzing Mrs. Wells about the HSBC account.

16. When Mrs. Wells realized that Miss Galvin was speaking to her about her private financial affairs, she immediately told Miss Galvin that she was not allowed to take personal calls at

work but that she would have someone call her back about the account.

17. Miss Galvin refused to discontinue to call. Rather she pressed Mrs. Wells about making a payment on the account.

18. Again Mrs. Wells told Miss Galvin that she was not allowed to talk on the phone at her place of employment.

19. Miss Galvin continued the call, stating, "Don't be in such a rush to get me off the phone, Ms. Wells, " and further, that we can "garnish your wages" and we will do that if don't get "cooperation from you."

20. Mrs. Wells then discontinued the call.

21. Miss Galvin's statement that Corporate Receivables could garnish her wages was a false statement and a threat to take action that cannot legally be taken.

22. At 9:16 Miss Galvin called again and reached Mrs. Wells. When Mrs. Wells discovered that it was Miss Galvin on the line, she discontinued the phone call.

23. Between 9:16 and 9:41 Miss Galvin called Mrs. Wells on her work number between 5 and 10 times.

24. These calls were all communications by Corporate Receivables at a time and place known by Corporate Receivables to be inconvenient to Mrs. Wells and had the effect of harassing Mrs. Wells.

25. Mrs. Wells was fearful that she would face discipline for the numerous personal phone calls she received that morning.

26. At 9:41 am Mrs. Wells received an email from James McCormick, her boss and the Director of her office, which stated as follows: "Angela Galvin form [sic] CRI called for a wage and

employment verification for you. I referred her to Lansing as we can't do wages, but did verify your employment."

27. Miss Galvin's call to Mr. McCormick was a communication with a third party made by a debt collector without the consent of Mrs. Wells, was harassing and not for the purpose of acquiring location information.

28. Miss Galvin's statement to Mr. McCormick that she was seeking wage and employment verification was false. Her purpose in contacting Mr. McCormick was solely to harass Mrs. Wells into making a payment on the account.

29. Mrs. Wells was horrified that Corporate Receivables would contact her employer regarding her private financial affairs and concerned that Corporate Receivables would reveal her financial difficulties to her employer and coworkers.

30. At 9:41 Miss Galvin left a voicemail on her work line that stated that Corporate Receivables would "go ahead" and take the action she had threatened in her earlier call.

31. This call was a communication by Corporate Receivables at a time and place known by Corporate Receivables to be inconvenient to Mrs. Wells and had the effect of harassing Mrs. Wells.

32. Miss Galvin's statement that Corporate Receivables could garnish her wages was a false statement and a threat to take action that cannot legally be taken.

33. At 9:41 AM Miss Galvin called Mrs. Wells' home number and left a message that it had verified all her information and her client proceed with the action threatened in the earlier call.

34. At 9:45 Mrs. Wells received a phone call from her husband, Mr. Wells. Mr. Wells relayed

4

the information in Miss Galvin's voicemail.

35. The voicemail left by Miss Galvin constituted a threat to garnish Mrs. Wells wages, was a false statement, and a threat to take action that cannot legally be taken.

36. As a result of the acts alleged above, Mrs. Wells has suffered damages.

## COUNT I – Fair Debt Collection Practices Act (Corporate Receivables Angela Galvin)

37. Mrs. Wells incorporates the preceding allegations by reference.

38. At all relevant times Corporate Receivables and Miss Galvin – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

39. Defendants are "debt collectors" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

40. Defendants' foregoing acts in attempting to collect this alleged debt against Mrs. Wells constitute violations of the FDCPA.

41. Mrs. Wells has suffered damages as a result of these violations of the FDCPA.

## COUNT II – Michigan Occupational Code (Corporate Receivables) as alternative to claims under the Michigan Collection Practices Act

42. Mrs. Wells incorporates the preceding allegations by reference.

43. Corporate Receivables is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

44. Mrs. Wells is a debtor as that term is defined in M.C.L. § 339.901(f).

45. Corporate Receivables's foregoing acts in attempting to collect this alleged debt against Mrs. Wells constitute violations of the Occupational Code.

46. Mrs. Wells has suffered damages as a result of these violations of the Michigan Occupational Code.

47. These violations of the Michigan Occupational Code were willful.

### COUNT III – Michigan Debt Collection Practices Act (Corporate Receivables)as alternative to claims under the Michigan Occupational Code

48. Mrs. Wells incorporates the preceding allegations by reference.

49. Corporate Receivables is a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(xi).

50. Corporate Receivables's foregoing acts in attempting to collect this alleged debt against Mrs. Wells constitute violations of the MCPA, M.C.L. § 445.251 *et seq.* including, but are not limited to, the following

51. Mrs. Wells has suffered damages as a result of Corporate Receivables's violations of the MCPA.

52. Corporate Receivables's violations of the Michigan Collection Practices Act were willful.

### Demand for Jury Trial

53. Plaintiff demands trial by jury in this action.

### Demand For Judgment for Relief

54. *Accordingly, Mrs. Wells requests that the Court grant:*
    a. *Equitable relief under statute and common law, in the form of a declaration that the amount sought by Defendant is not actually owed and an injunction prohibiting further collection of those amounts.*
    b. *Actual damages.*

  c. *Statutory damages.*

  d. *Treble damages.*

  e. *Statutory costs and attorney fees.*

         Respectfully Submitted,

         LYNGKLIP & ASSOCIATES
         CONSUMER LAW CENTER, PLC

         By: _/s/ Julie A. Petrik_
         Julie A. Petrik (P47131)
         Attorney For Pamela Wells
         24500 Northwestern Highway, Ste. 206
         Southfield, MI 48075
         (248) 208-8864
         JuliePetrik@Att.Net

Dated: November 28, 2007